95 So.2d 653

**UNITED DISTRIBUTORS, Inc.**

v.

**AIRCO APPLIANCE & HARDWARE, Inc., et al.**

No. 42956.

May 6, 1957.

S. Paul Weiss, Jr., New Orleans, for plaintiff-appellant.

Harold J. Zeringer, Jr., New Orleans, for defendants-appellees.

FOURNET, Chief Justice.

The plaintiff, United Distributors, Inc., alleging that it had sold merchandise to defendant Airco Appliance & Hardware, Inc. on the faith of a guarantee of credit signed by defendants Henry R. Burke and Alfred R. Willis, instituted proceedings against the three in solido to recover the amount of a note signed by Burke as president of the said corporation. The liability of Burke and the corporation is not at issue, no defense as to them having been made; but Willis answered, denying liability on the guarantee, claiming that the sole consideration for the execution of the instrument was the fact that he was at that time a prospective shareholder of the corporation to the extent of 50% of the stock, but that the consideration failed in that the plan did not materialize and he never became a stockholder, all to the knowledge of plaintiff; in the alternative, if the Court should find that the guarantee is a binding obligation on the defendant Willis, then he plead-

ed the revocation of the instrument; and in the further alternative, filed a plea of estoppel. On trial of the case there was judgment dismissing the suit as to Willis, and from that judgment the plaintiff has appealed.

The facts pertinent to a decision in this case are that in January, 1953, Henry R. Burke formed a corporation known as Airco Appliance and Hardware, Inc., hereinafter called Airco, with a store at 502 Metairie Road, Metairie, La., and shortly thereafter Willis, who was engaged in the construction business, considered acquiring a half interest in the corporation. The men proposed to conduct an appliance business, dealing in washing machines, refrigerators, stoves, etc., and a salesman of the plaintiff, one George R. Seamon, offered a so-called budget plan for selling the company several thousand dollars' worth of stock-in-trade, payment to be by weekly payments over a period of 20 weeks. A proposed initial order was prepared and the necessary papers, including an application for credit, a note, and post dated checks to satisfy the requirements of the budget plan, were signed by Willis and Burke; the salesman then took the two men to the plaintiff's place of business where they met the credit manager, were conducted to the private office occupied by Mr. Rash, the late president of the plaintiff, and where each signed a duplicate copy of the guarantee on which plaintiff predicates the liability of Willis. It appears from the testimony that the guarantee was a special form which Mr. Rash had composed "for his own protection," his method of operation being to require the individual people who were forming a corporation to sign the form presented, incorporating a personal guarantee of the debts of the company, so that if it were to become insolvent the individuals could be held responsible.[1] Some two days later Willis, having concluded that the appliance business was too precarious, de-

1. The guarantee reads as follows: "In consideration of the sale of goods, wares, and merchandise and the extension of credit granted in connection therewith by The United Distributors, Inc., or Contract Acceptance Corporation to Airco Appliance & Hardware, Inc., I hereby unconditionally guarantee the prompt and punctual payment to The United Distributors, Inc., or Contract Acceptance Corporation of any indebtedness which shall be owing at any time to The United Distributors, Inc., or Contract Acceptance Corporation on account of merchandise sold heretofore or hereafter, whether said indebtedness is in the form of notes, bills, or open account. This shall be an open and continuing guaranty, and shall continue in force notwithstanding any change in the form of such indebtedness, or renewals, extensions, or indulgences granted by The United Distributors, Inc., or Contract Acceptance Corporation, without obtaining my consent thereto, and until expressly revoked by written notice from me, and any such revocation shall not in any manner affect my liability as to any indebtedness contracted prior thereto. Notice of indebtedness and of default in payment are hereby waived. Liability under this guaranty shall, at no time, exceed the sum of $10,000."

cided not to become associated with the venture in any way; the plaintiff was so informed and Seamon returned to the Airco store with all papers which had been signed in connection with Willis' participation in the business with the single exception of the guarantee; Willis and Burke, believing that the guarantee was included, immediately destroyed the papers.[2] Seamon was unequivocal in saying that from then on he knew Willis was not to be associated in the Airco corporation.

The purchases, non-payment for which formed the basis of this suit, were made by the corporation under Burke's operation, he having continued the appliance business after the events detailed above and having made periodic purchases from plaintiff. The instant note, in amount of $3,107.82, due May 1st, 1954, was given by Airco in payment for air conditioning units purchased a year after Willis had made his decision not to become a stockholder in Airco.[3] Willis' liability in solido for the full amount of the note plus interest and attorney's fees is based on the guarantee signed by him in

March, 1953 which, unknown to him, had been retained in the files of the plaintiff company.

The plaintiff contends that the contract is clear and unambiguous, and defendant is bound by its contents; that there is no showing that Willis revoked the guarantee in writing, as required by its provisions; and that, relying on the guarantee, the plaintiff sold the merchandise, for which payment has never been received. It seeks to invoke an equitable maxim that where one of two innocent persons must suffer a loss, that loss should be borne by the one whose negligence was the cause.

The testimony of Mr. Passmore, plaintiff's credit manager at the time of the signing of the guarantee, that he received neither verbal nor written advice to the effect that Willis was not to be associated with Airco, is not impressive in the light of the facts of the case as hereinabove disclosed and the fact that Burke testified he notified the plaintiff in writing of Willis' decision. From the record it is clear that the sole motive for execution of the guarantee by

---

2. In handing over the documents, including the application for credit, the order forms, the note and post-dated checks, Seamon gave the assurance that he was returning "all the papers there were," saying "Here is everything; this is the end." He was unaware that Willis and Burke had signed the guarantee.

3. Burke explained that "This [note] was signed in April or May of 1954 and we had a June 10 billing on it * * * The first payment [on the note] due in June.

Then what happened, the distributors began underselling. Where we paid $236 for a unit the distributors were selling for $185. We had no price protection. I had the money at the time and I wanted to make a settlement with United Distributors to pay on the basis they were currently getting for the units but they would not accept it. Meantime, the money became used up in the corporation and we ran out of money. * * *. *Mr. Willis had no part of it at no time.* * * *" (Emphasis supplied.)

Willis—which guarantee was signed conformably with the policy of the plaintiff's president with respect to the extension of credit to new corporations—was Willis' intention to become a stockholder to the extent of a half interest, and to be associated in the undertaking; it necessarily follows that when his acquisition of stock did not materialize and the plaintiff was apprised that he would not be connected with Airco, the motive failed and the contract became ineffective. Revised Civil Code Articles 1825, 1826 and 1827.

For the reasons assigned, the judgment appealed from is affirmed.